UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　v.<br><br>EDDIE DAVID ZAMARRIPA,<br><br>　　Defendant. | NO. CR-10-2025-FVS<br><br>**MEMORANDUM OPINION; ORDER DENYING MOTION TO SUPPRESS; ORDER EXCLUDING TIME** |

**BEFORE THE COURT** is the Defendant's Motion to Suppress (Ct. Rec. 65) filed on July 2, 2010, to which the Government has responded in opposition (Ct. Rec. 78) and the Defendant has replied (Ct. Rec. 79). The court heard testimony of four City of Yakima police officers and oral argument on July 23, 2010 in Yakima, Washington. Kraig Gardner participated on behalf of Mr. Zamarripa, who was present. Assistant United States Attorney James Goeke appeared on behalf of the Government. Mr. Zamarripa is charged with being a felon in possession of a loaded firearm. He contends that the firearm found on his person resulted from both an unreasonable stop and unreasonable "pat down" search. For the reasons stated herein and in court, the Motion is denied, as both the stop and "pat down" search were reasonable and justified.

I. Findings of Fact

At approximately 4:00 pm on February 3, 2010, in Yakima, Washington, two plainclothes officers with the Yakima Police Department, Randall Baker ("Baker") and

ORDER - 1

Chris Taylor ("Taylor"), assigned to the gang unit, were patrolling the area of Sixth and Lincoln streets in an unmarked vehicle. The officers observed three men walking down the street. Officer Baker believed one of the men resembled a car prowling suspect whose black and white surveillance photograph he had seen earlier in his shift. Upon inspection of the photograph, the court concluded that the Defendant, Eddie Zamarripa ("Zamarripa"), bears a strong resemblance to the black and white photograph of the suspected car prowler.

Officers Baker and Taylor saw one of the men, later identified as Mr. Zamarripa, walk into the street to approach a Chevrolet Impala that was idling at a stop sign. The officers witnessed Mr. Zamarripa strike the front passenger window of the Impala with sufficient force such that they believed the window might break. Mr. Zamarripa then stepped back and spread out his arms in a challenging manner, which the officers believed was solicitation for a fight. Officer Baker believed this action indicated Mr. Zamarripa wanted to fight an occupant of the Impala. The Impala drove away without further incident. It is unclear whether Officers Baker and Taylor attempted to locate the Impala or its occupants to ascertain what had taken place at the stop sign.

Officer Baker or Taylor phoned Officer Ileanna Salinas ("Salinas") and Officer Kevin Cays ("Cays"), who were patrolling nearby in a marked "gang unit" patrol car, and told those officers of their observations. Baker and Taylor asked Ms. Salinas and Mr. Cays to contact the suspects since they did not want to expose themselves as police undercover officers. Officer Baker noted that Mr. Zamarripa was wearing a red beanie and relayed this information to Officer Salinas. Members of the Norteno gang, active in the area, including 6th and Lincoln, often identified themselves as such through red articles of clothing or accessories.

Officers Salinas and Cays exited their patrol car and made contact with the three men, including Mr. Zamarripa. The men were ordered to remove their hands from their pockets. Officer Salinas recognized Mr. Zamarripa from previous gang-related investigations and interactions, though she could not recall his name at the time. Given

ORDER - 2

the high level of gang activity in the area and the fact that gang members were often armed, the officers instructed the men to place their hands on the trunk of their patrol car, and then conducted a "pat down" of their exterior clothing. Officer Salinas felt a large, heavy object in the right breast pocket of Mr. Zamarripa's coat, and strongly believed the object to be a handgun. Officer Salinas immediately handcuffed Mr. Zamarripa and opened the zipper of the coat pocket containing the suspected firearm. The object in question was a loaded .22 caliber revolver. Officer Salinas secured the handgun in the patrol car and ran a records check for Mr. Zamarripa, confirming that he was a convicted felon.

All of the police officers were experienced officers. The court found their testimony to be reliable and credible.

## II. Discussion

Mr. Zamarripa sets forth two reasons the firearm should be suppressed. First, that Officers Salinas and Cays lacked a reasonable suspicion to stop Mr. Zamarripa and his companions, and secondly, that Officers Salinas and Cays lacked justification for patting down Mr. Zamarripa. Ct. Rec. 66, 5:7-12.

A. *Terry* Stop

*Terry v. Ohio*, 392 U.S. 1, 30 (1968), established that a brief investigatory detention, though constituting a seizure, was nonetheless lawful provided police have a reasonable suspicion that criminal activity may be afoot. Mr. Zamarripa begins his analysis with the question of whether he was seized, but the Government does not disagree that Mr. Zamarripa was the subject of an investigative *Terry* stop. Ct. Rec. 78, 5:2-9. It is appropriate to turn, therefore, to the factual question of reasonable suspicion.

A police officer has sufficient reasonable suspicion to justify a *Terry* stop where the person being stopped resembles a suspect in a photograph viewed by the police officer. *United States v. Thomas*, 524 F.3d 855, 858 (8th Cir. 2008). Mr. Zamarripa bears a close, reasonably ascertainable resemblance to the car prowling suspect seen by Officer Baker in the photograph. That fact and the conduct of Zamarripa with the Impala

automobile and its occupants gave the officers a reasonable basis for the *Terry* stop.

Furthermore, the Officers possessed a reasonable belief that malicious mischief and/or disorderly conduct misdemeanors occurred when they observed Mr. Zamarripa violently strike the window of the idling Impala and indicate a desire to fight the occupant(s). Though arguably benign explanations for such conduct could have existed, it was reasonable for the Officers to consider the actions of Zamarripa and the nature of the surrounding area, known for unlawful gang activity, in concluding that the actions of Mr. Zamarripa were potentially criminal and dangerous. This conclusion was bolstered by the fact that Mr. Zamarripa was wearing a red head covering similar to a bandana, indicating likely association with the Norteno gang that the Officers knew to be active in the area.

The court finds that Mr. Zamarripa's physical resemblance to the photograph of the car-prowling suspect, his interaction and apparent criminal contact with the Impala, and his gang-related head covering in an area known for gang activity created a totality of circumstances giving rise to a reasonable suspicion that criminal activity was afoot. Officer Salinas also recognized Mr. Zamarripa as a person associated with gang activity in the area. Accordingly, the investigative *Terry* stop of Mr. Zamarripa and his companions was justified.

B.  Frisk

Under *Terry*, a search for weapons is permissible "for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. The Officers had sufficient, reasonable concerns regarding their safety, and the potentially armed and dangerous nature of Mr. Zamarripa and his companions, to justify the frisk. Officer Salinas stated in her report: "Due to the area, which is an area that is predominantly Norteno gang members, and recent shootings involving rival gangs, we conducted a pat down for weapons for our safety." Ct. Rec. 67, Ex. C. Furthermore, Mr. Zamarripa's aggressive interaction with the Impala was relayed to Officers Salinas and Cays. They were outnumbered by the three men. Officer

ORDER - 4

Salinas, an experienced gang patrol officer, also recognized Mr. Zamarripa as having gang connections from previous interactions. The officers were also aware that gang members were often armed with knives, guns, brass knuckles, and other weapons. The court finds that the totality of the circumstances created a reasonable concern for the officers regarding their safety and that such an exterior frisk was justified. Certainly, in this case, the activity of Mr. Zamarripa in this case, gave the officers even more reasonable suspicion of criminal activity than the "furtive" movements of an automobile passenger found to create reasonable suspicion warranting a pat-down in *U. S. v. Burkett*, ___F.3d.___ (9th Cir. July 20, 2010), 2010 WL 2814312.

### III.  Conclusions

Mr. Zamarripa's criminal interaction with the Impala automobile and its occupants in an area known for gang activity, his red gang headdress, and his resemblance to the photograph of the car-prowling suspect gave rise to reasonable suspicion sufficient to justify a *Terry* stop. The same factors, coupled with the fact that Officer Salinas recognized Mr. Zamarripa from previous gang-related interactions justified the Officers' exterior frisk search of Mr. Zamarripa and his companions. Accordingly,

**IT IS HEREBY ORDERED**:

1. The Defendant's Motion to Suppress (Ct. Rec. 65) is **DENIED**.

2. Pursuant to 18 U.S.C. § 3161(h)(1)(D), the time from July 2, 2010, the date of the filing of the Motion To Suppress to July 23, 2010, the date of the oral decision, is excluded from the Speedy Trial Act time computation.

The Clerk is hereby directed to enter this Order and furnish copies to counsel and to Judge Van Sickle.

**DATED** this 29th  day of July, 2010.

                        s/ Justin L. Quackenbush
                      JUSTIN L. QUACKENBUSH
        SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 5